IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CRAIG ALAN CLARK AND CHRISTINA CLARK,

    Plaintiffs,

    v.

TRANSPACK CORPORATION; BUCKLEY & ASSOCIATES, INC.; TRANSAMERICA HOME LOAN; WILSHIRE CREDIT CORPORATION; OCWEN FEDERAL BANK; and DOES 1 through 50, inclusive,

    Defendants.

CIV-S-04-0332 DFL PAN

MEMORANDUM OF OPINION AND ORDER

    Plaintiffs Craig and Christina Clark ("the Clarks") sued defendants Transpack Corporation ("Transpack"), Buckley & Associates ("Buckley"), Transamerica Financial Services ("Transamerica"), and Wilshire Credit Corporation ("Wilshire"), for alleged wrongdoing in connection with the foreclosure sale of the Clarks' home. Both sides move for summary judgment or, in the alternative, partial summary judgment. The defendants' motion for summary judgment on the Fair Debt Collection Practices

1

Act, 15 U.S.C. §§ 1692 et seq., (FDCPA) claim is GRANTED.  The court declines to exercise supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. 1367(c)(3).  The case is remanded to the Sacramento County Superior Court.

## I.

In 1989, the Clarks bought a home located at 209 West Elkhorn Boulevard in Rio Linda, California.  (PUF ¶ 3.)  In June 1992, they borrowed $49,846.23 from Transamerica.  (Id. ¶ 4.)  The Clarks secured this loan by executing a deed of trust on the home.  (FAC ¶ 11.) Transamerica subsequently lost the promissory note evidencing the terms of the June 1992 loan.  (PUF ¶ 8.)

In October 1993, the Clarks filed for bankruptcy.  (DUF ¶ 4.)  On October 5, 1993, the Clarks reaffirmed Transamerica's lien by executing a Statement of Intention.  (Id. ¶ 7.)  The bankruptcy court discharged the Clarks' case in January 1994.  (Id. ¶ 5.)  The Clarks continued to make monthly payments according to the alleged terms of the loan until July 1995.  (Virgil Decl. Ex. 15 at 5-8, 19-37.)  Beginning in August 1995, the Clarks reduced their loan payments by almost half.  (Id.)  They paid this reduced amount each month until July 1996.  (Id.)  At that time, the Clarks stopped making any payments on the loan even though there was an outstanding balance.  (Id.)

On November 13, 2001, Transamerica sold the loan and deed to Transpack.  (Defs.'Opp'n at 4-5.)  On November 26, 2001, Transpack substituted Buckley as trustee under the Deed of Trust.  (Id. at 5.)  On that same day, Buckley recorded with the

2

Sacramento County Recorder a "Notice of Default and Election to Sell Under Deed of Trust" (the "Notice of Default"). (Bowditch Decl. Ex. 2.) On December 3, 2001, Buckley sent the Clarks a debt validation notice indicating the amount owed on the debt (the "Debt Validation Notice"). (Buchanan Decl. Ex. G.) In February 2002, Buckley recorded a "Notice of Trustee's Sale." (Id. Ex. H.) The notice indicated that the sale was scheduled for March 27, 2002. (Id.)

Transpack postponed the initial sale from March 27, 2002 until April 24, 2002. (Bowditch Decl. ¶ 21.) Both parties then agreed to postpone the sale again from April 24, 2002 until April 30, 2002. (Id. ¶ 22.) On April 25, 2002, the Clarks filed a second bankruptcy. (Clark Decl. ¶ 7.) Buckley postponed the sale an additional fourteen times during this bankruptcy. (Bowditch Decl. ¶ 24.) The bankruptcy court dismissed the Clarks' case on January 16, 2003. (DUF ¶ 27.) Buckley held the foreclosure sale on February 5, 2003. (Id. ¶ 29.) Transpack purchased the subject property for $84,000.00 at the sale. (Id. ¶¶ 29-30.)

On February 6, 2003, the Clarks found a "three-day notice" posted on their property. (Clark Decl. ¶ 7.) On February 11, 2003 the Clarks filed a third bankruptcy. (DUF ¶ 41.) Transpack moved for relief from the automatic stay. (Id. ¶ 43.) The court granted Transpack's motion on May 20, 2003. (Id.) On June 9, 2003, Transpack filed an unlawful detainer action against the Clarks. (Id. ¶ 45.) On September 24, 2003, a Sacramento County

Superior Court judge issued Transpack a writ of possession for the subject property. (Id. ¶ 47.) On November 14, 2003, Transpack sold the house to Kukis Home Repair, Inc. for $161,500.00. (Id. ¶ 48.) The property was sold about six months later for $256,000. (Clark Decl. at 5.)

The Clarks filed the original complaint in Sacramento County Superior Court on June 17, 2003. (DUF ¶ 49.) On October 24, 2003, Wilshire removed the action based on the Clarks' single federal claim. (Id. ¶ 50.) The Clarks filed a First Amended Complaint on August 18, 2004. (Id. ¶ 51.) The amended complaint includes one federal and nine state causes of action. (Id.) On May 13, 2005, Wilshire was dismissed with prejudice. (Id. ¶ 53.) On June 10, 2005, the Clarks settled with Transamerica for $2,500. (Id. ¶ 62.) Transpack and Buckley are the only remaining defendants in this case (collectively "the defendants").

## II.

Both parties seek summary judgment on the Clarks' claim that the defendants violated the FDCPA.[1] (Pls.' Mot. at 13.) The Clarks allege that the defendants violated FDCPA by: (1)

---

[1] In their amended complaint, the Clarks list nine state claims and a federal claim under the FDCPA. (Compl. ¶¶ 54-55.) However, in their summary judgment motion, the Clarks briefly accuse the defendants of violating the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 12601 et seq. (RESPA). This claim is not included in the complaint. The Clarks did not seek leave of court to amend the complaint. Fed.R.Civ.P. 15(a). Because the Clarks did not properly plead this claim, the court will not consider it.

4

"repeatedly demanding arbitrary and varying amounts of principal and interest and other unexplained amounts" without possession of the actual promissory note; (2) failing to set forth the method of calculating the amount due on the loan; and (3) "obfuscat[ing] their identity and role in their communications" with the Clarks. (Pls.' Mot. at 14.)

The defendants argue that they are entitled to summary judgment on the FDCPA claim because none of the alleged violations occurred during the limitations period. (Defs.' Mot. at 26.) Section 1692k(d) requires plaintiffs to bring FDCPA claims "within one year from the date on which the violation occurs." The Clarks filed the original complaint in this action on June 17, 2003. (Notice of Removal Ex. A.) Therefore, the Clarks can only bring claims for violations that occurred on or after June 17, 2002.

The Notice of Default, Debt Validation Notice, and Notice of Trustee's Sale were all delivered prior to June 17, 2002. (Buchanan Decl. Exs. E, G, H.) Therefore, the Clarks cannot assert a FDCPA claim based on alleged irregularities in those documents. Although the Trustee's Deed Upon Sale was generated within the limitations period, it is not covered by the FDCPA because the document serves to evidence a sale, not collect a debt. The FDCPA is limited to debt collection activities. See 15 U.S.C. § 1692e (prohibiting misleading communications in connection with the collection of a debt); Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1099 (9th Cir. 1996) (stating that the FDCPA

5

aims to prevent abusive debt collection practices). Therefore, even if the defendants listed an incorrect amount of debt on that instrument, they did not violate the FDCPA.

The Clarks allege no other instance where the defendants declared an incorrect amount due on the loan in an effort to collect the debt.[2] Similarly, there is no evidence of the defendants making a deceptive communication after June 17, 2002. However, at the hearing on this motion, the Clarks contended that their claim was not barred by the statute of limitations because the defendants engaged in a "course of conduct" after June 17, 2002 that deceived the Clarks. This argument also fails.

To determine when the limitations period begins to run for an FDCPA claim, courts look to the debt collector's "last opportunity to comply with the [Act]." Mattson v. U.S. West Communications, 967 F.2d 259, 261 (8th Cir. 1992); see also Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997); Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995). For example, if the FDCPA violation is the filing of a meritless collection action in state court, then the statute of limitations begins to run when the debt collector files suit. Naas, 130 F.3d at 893. Similarly, if

---

[2] In their opposition, the Clarks list two other statements of debt: (1) the First American Title Trustee's Sale Guarantee; and (2) the Notice of Servicing Transfer. The information on these documents does not afford the Clarks a cause of action under the FDCPA because: (1) neither attempts to recover a debt; (2) the defendants did not participate in creating or distributing the Notice of Servicing Transfer; and (3) the sale guarantee was not uncovered until discovery, therefore it could not have misled the Clarks prior to the foreclosure sale. (Buchanan Decl. Exs. B, D.)

the violation is a harassing debt collection letter, then the statute of limitations begins to run when the debt collector mails the letter.  Maloy, 64 F.3d at 608.  This is true even though the effects of these actions might persist for months or even years.

The evidence shows that after June 17, 2002, the defendants: (1) postponed the sale of the property thirteen times; (2) obtained leave from the automatic stay to sell the property; and (3) sold the property.  There is no evidence that defendants' "course of conduct" after June 17, 2002 included making any misrepresentations in an effort to collect the debt.  Therefore, even if the Clarks were deterred from repaying the loan because it was misstated on the Notice of Default, Debt Validation Notice, or in some other pre-June 17, 2002 communication, their claims under the FDCPA are time-barred.

### III.

Defendants' motion for summary judgment on the FDCPA claim is GRANTED.  The court declines to exercise supplemental jurisdiction over the remaining state law claims.  The clerk shall: (1) remand the case to the Sacramento County Superior Court, and (2) enter judgment.

IT IS SO ORDERED.

Dated: 11/11/2005                /s/ David F. Levi
                                 DAVID F. LEVI
                                 UNITED STATES DISTRICT JUDGE

7